UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID FINDLING,

    Plaintiff,                               Civil Action No. 17-CV-11255

vs.                                           HON. BERNARD A. FRIEDMAN

REALCOMP II, LTD., et al.

    Defendants.
_____/

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on defendants' motions to dismiss [docket entries 15 and 23]. These motions are fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide them without a hearing.

## **FACTS**

The following facts are summarized from the complaint and its exhibits: Plaintiff is a lawyer in southeast Michigan. In his practice, he serves as a court-appointed receiver, an assignee for the benefit of creditors, and a bankruptcy trustee. Michigan law requires anyone who regularly sells real estate to have a real estate broker license. But attorneys acting as receivers or trustees are exempt from this requirement. *See* Mich. Comp. Laws § 339.2503(2).

Defendant Realcomp is a multiple listing service (MLS) controlled by the eight defendant realtor associations. MLSs compile extensive details on properties for sale within a certain geographic area—in this case, in southeast Michigan. Realcomp also maintains statistics on sold properties. Plaintiff says that Realcomp's MLS is "the most effective marketing tool for residential real estate in" southeast Michigan. Compl. p. 2. Realcomp's MLS is "available only to the members of the Realcomp Owners." *Id.* at 3. To become a Realcomp member, an applicant

must be a licensed broker in southeast Michigan actively endeavoring to make or accept offers on property.[1] They must also be a member or affiliate of one of the eight controlling realtor associations and pay a membership fee.

Because plaintiff is not a licensed real estate broker or member of Realcomp or any of its controlling realtor associations, when he wants to list a piece of property in the MLS, he must pay a member broker a listing fee. Plaintiff wants to use the MLS because he feels it is more effective than self-advertising. But he also wants to avoid paying the listing fee or, alternately, the inconvenience of becoming a licensed broker and paying a membership fee. So in July 2016 plaintiff applied to one of the defendant realtor associations, Greater Metropolitan Association Realtors (GMAR). GMAR denied plaintiff's application because he is not a real estate agent, broker, or appraiser and has not obtained a license.[2] Plaintiff insisted that because Michigan law exempts him from its real estate broker licensing requirements, GMAR could not deny him membership because he lacks such a license.

In April 2017, plaintiff filed the instant complaint, asserting four counts: Counts I and IV assert that defendants are illegally maintaining a monopoly in the southeastern Michigan market for the listing and sale of real estate; and Counts II and III assert that defendants are illegally tying membership in the defendant realtor associations to access to the MLS.

**STANDARD**

Fed. R. Civ. P. 12(b)(6) states that the Court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." For a complaint to survive a Rule 12(b)(6) motion, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[1] Realcomp's rules emphasize that this does not preclude part-time, online-only, or unsuccessful realtors, or allow Realcomp to arbitrarily discriminate.
[2] The seven other defendant realtor associations maintain similar rules.

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Substantive Law

The Sherman Act, 15 U.S.C § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Under § 2, persons shall not "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations."

### II. Analysis

#### a. Antitrust Standing

"[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). The Court must consider five factors when deciding whether a plaintiff has antitrust standing:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983).

3

The Court will decide these motions based on factor (2), which is also called "antitrust injury." Antitrust injury is a "necessary, but not always sufficient," condition of antitrust standing, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986), and is an "injury of the type the antitrust laws were intended to prevent," *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). A plaintiff must show that defendants caused a "market-wide injury." *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005). Further, antitrust laws protect "competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Therefore, an injury "causally related to an antitrust violation . . . will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). The Sixth Circuit "has been reasonably aggressive in using the antitrust injury doctrine to bar recovery." *Valley Prods. Co., Inc. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398, 403 (6th Cir. 1997).

Plaintiff does not state an antitrust claim because he fails to sufficiently allege antitrust injury and, thus, antitrust standing. The Court must first determine the precise scope of the alleged antitrust injury. The product here is not real estate, but a real estate advertising platform—the MLS. Plaintiff fails to allege any facts about the real estate advertising market or who the major real estate advertising competitors may be. His vague allegations about injuries to the unidentified "others" are wholly conclusory. Under *Iqbal*, they are not enough. As plaintiff fails to sufficiently allege a market, competitors, or any other injured person, the Court cannot reasonably infer a market-wide injury.

Plaintiff further fails to allege antitrust injury because the complained-of practice—Realcomp's MLS administration—actually promotes competition. Plaintiff's major contention is

that the defendants substantially hurt competition by impermissibly tying access to the MLS to membership in a realtor association. But the alleged facts do not bear this out. The MLS is nothing more than an information-aggregating advertising platform. Generally, the more informed a consumer base is, the more likely it is that it will channel its scarce resources to the most attractive, competitively priced product. In other words, data and choices breed competition. This is precisely what the MLS does by providing customers with aggregated, streamlined information. Indeed, absent allegations of unfair discrimination, it is hard to imagine that any MLS is a net anti-competitive force or violates § 1. *See Reifert v. South Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 320–21, (7th Cir. 2006) (holding that an MLS did not deny access and that it did not negatively impact competition). Because pro-competition behavior does not violate § 1, and because plaintiff fails to show that defendants' MLS is anti-competitive, he fails to show antitrust injury. *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000).

Finally, plaintiff fails to show antitrust injury because he fails to allege that Realcomp's tying of access to the MLS to membership in a defendant real estate association forecloses other sales. The United States District Court for the Eastern District of Kentucky recently explained why this omission is fatal to an antitrust claim:

> Viewing the facts and drawing inferences most favorable to plaintiffs, the court concludes that they lack antitrust standing as a matter of law. Although plaintiffs assert standing on the basis that they were forced to purchase an unwanted product—membership in a local Realtor® association—such "harm" does not constitute "antitrust injury" necessary for standing.
>
> In *Jefferson Parish,* the Supreme Court was careful to point out that no antitrust claim would lie just because the plaintiff was "forced" to purchase an unwanted product if, absent the tie, he would not have bought it elsewhere. *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. 1551. This is because, in such a situation, no sales in the tied product market were foreclosed on account of the tie and, thus, there has been no harm to competition. *Id.* The plaintiff merely ends up with

5

> a product he did not want. . . . *See also Young v. Lehigh Corp.,* No. 80C4376, 1989 WL 117960, at *15 (N. D. Ill. Sept.28, 1989) ("Although the plaintiff may have suffered an 'injury' in paying for club membership that he did not need or want, he did not suffer an 'antitrust injury' and, therefore, does not have standing to assert an antitrust tying claim.").
>
> Thus, while plaintiffs may not have wanted to purchase a Realtor® membership, in order to bring this antitrust claim they must show that they have suffered an injury caused by some anticompetitive harm or effect flowing from that requirement. This they have not done.

*Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*, 410 F. Supp. 2d 574, 580 (E.D. Ky.), *aff'd sub nom.*, *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors, Inc.*, 198 F. App'x 485 (6th Cir. 2006). In other words, if a defendant's tie does not cause a competitor to lose a sale, plaintiff fails to show antitrust injury. Here, as in *Buyer's Corner*, plaintiff fails to allege that he would have joined a different realtor association absent the tie of access to the MLS to membership in one of the defendant realtor associations. As no competitor is losing a sale, plaintiff fails to show antitrust injury.

Plaintiff may not like having to secure a broker's license and pay his dues, but categorizing plaintiff's claims as an antitrust matter would "trivializ[e] the Act." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993). Because plaintiff has not alleged facts sufficient for the Court to reasonably infer that defendants' requirements cause antitrust injury, he lacks antitrust standing.

### b. Sherman Act § 1—Counts II and III

Even if plaintiff did have standing, the Court cannot reasonably infer that defendants' membership requirements unreasonably restrain trade. Here, the antitrust violation plaintiff asserts is an alleged tying arrangement. A tying arrangement is a requirement by a seller that the sale of a product or service which possesses market power (access to the MLS) will only

6

be made on the condition that the purchaser buy a second product or service (membership in a defendant realtor association) from the producer. There is no question that defendants are tying access to membership, but the question is whether plaintiff alleges facts such that the Court can reasonably infer that this arrangement violates § 1?

"Antitrust cases under Section 1 involve two modes of analysis depending on the nature of the claim. The 'rule of reason' governs most allegations of restraints on trade." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) (quotation omitted). "A 'restraint' is unlawful it if is 'unreasonable,'" *id.*, based on all of "the relevant circumstances," *Monsanto Co. v. Spray-rite Serv. Corp.*, 465 U.S. 752, 761 (1984). When deciding whether a local realtor board's requirements violate § 1, the Court should use the rule of reason. *See United States v. Realty Multi–List, Inc.*, 629 F.2d 1351, 1358 (5th Cir. 1980).

Plaintiff fails to sufficiently allege that defendants' tying arrangement violates § 1 because he alleges only that Realcomp is a voluntary trade association[3] with membership benefits. One of its membership benefits is access to the MLS. This, without more, is not a § 1 violation. *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458–59 (1986).[4]

Indeed, it is widely recognized that private organizations may reasonably tie their benefits and services to membership. In *United States v. Associated Press*, the Court considered

---

[3] In every way, Realcomp acts as a voluntary trade association. Comparison with another, well-recognized voluntary trade organization—a farmers market—is helpful: In a farmers market, each member is a farmer or works for one; many sell the same or similar goods and, thus, are competitors; members pay a fee in exchange for a shared space to advertise their goods; and there is no market for farmers markets themselves. In the same way, each member of Realcomp is a licensed broker or affiliated with one; all sell the same goods (real estate); all pay a fee in exchange for a shared space to advertise their products (the MLS); and there is no market for MLSs. That Realcomp has no identifiable competitors and does not sell or market its MLS is strong evidence that it is nothing more than a voluntary trade association.

[4] *See also Anderson v. United States*, 171 U.S. 604, 618–19 (1974) ("That an agreement might give the parties to it an edge over competitors is not" alone a violation of § 1); *Martin-Trigona v. Nat'l Ass'n of Realtors*, 1978 WL 1310 (E.D. Ill. Feb. 22, 1978) ("The defendant realtors are all members of a voluntary trade association and as such may properly exclude any non-member from participation in its activities. Such exclusion does not constitute a violation of the antitrust laws");

7

a § 1 challenge to the Associated Press bylaws, which severely restricted membership and allowed existing AP members to block a competitor's membership application. 326 U.S. 1 (1945). Without the competitor's consent, the applicant could gain membership only upon several conditions, including a majority vote of some 1200 AP members. *Id.* at 9, 11. Also, AP members could not share their news stories with nonmembers. *Id.* at 9. The Court held that arbitrary and discriminatory application of membership criteria illegally restrained competition. *Id.* at 12. But, critically, it also held that the AP's refusal to provide member benefits to nonmembers did not violate § 1. *Id.* at 21–23. In other words, a private organization may restrict even economically necessary services to its members so long as it does not deny membership arbitrarily. *Id.*

Here, plaintiff's allegations fail to show that defendants are unreasonably or discriminatorily restricting access to the MLS. He does not argue that, were he to meet the realtor associations' membership requirements (i.e., broker's license and membership dues), they would deny his application or access to the MLS. Nor does he allege that the license and dues requirements are unreasonable. Because plaintiff does not allege unreasonableness or discrimination, under *Associated Press*, defendants' requirements do not violate § 1.

This holding mirrors the nationwide consensus that MLS providers do not violate § 1 when they restrict access to member brokers who have paid reasonable fees.[5] Of the myriad

---

[5] *See, e.g.*, *State v. Cedar Rapids Bd. of Realtors*, 300 N.W.2d 127, 131 (Iowa 1981). In *Cedar Rapids*, "a few" local brokers "want[ed] access to the MLS without the 'unnecessary barrier' of Board membership." 300 N.W. 2d at 129. They asked that the Court remove "'the price of admission to a non-related activity,' i.e., Board membership and fees, because one broker testified MLS access is an 'economic necessity.'" *Id.* The court refused, holding that because "Board membership [was] available to all on a non-discriminatory basis," it would "not compel this private trade association to share one of its membership benefits with brokers who, for whatever personal or business reasons, declined to join." *Id.* at 131. The board's "reasonable" membership criteria "and its rule against non-member MLS participation" did not violate § 1. *Id.* Federal district courts have said the same. *See, e.g.*, *Prencipe v. Spokane Bd. of Realtors*, 2006 WL 1310402 (E.D. Wash. 2006) ("[A] lawful exercise of a trade association's right to limit its services to its members and such membership is not the product of [a] conspiracy"), and *Venture Resources Group, Inc. v. Greater New Jersey Regional Multiple Listing Service, Inc.*, 1995 WL 866841 (D.N.J. 1995) (holding that conditioning access to an MLS on membership in a board of realtors does not violate § 1). As have federal appeals courts. *See, e.g.*, *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803 (1st Cir. 1988) (holding that conditioning access to an MLS on membership in a realtor association does not show an unlawful tying arrangement).

cases that discuss this, *Pope v. Miss. Real Estate Comm'n*, 695 F. Supp. 253 (N.D. Miss. 1988), *aff'd*, 872 F.2d 127 (5th Cir. 1989), is particularly instructive. In *Pope*, the plaintiffs claimed that the defendants denied them "access to the multiple listing service in violation of antitrust laws." 695 F. Supp. at 266. The court held that defendants did not violate § 1 for three reasons.

First, plaintiffs failed to allege discriminatory application of membership criteria. The plaintiffs voluntarily chose not to be fee-paying members of the local Board of Realtors, but demanded full access to member benefits. *Id.* The court found that they failed "to establish that they would be excluded from board membership or denied participation in the multiple listing service if they were willing to pay membership dues"—i.e., that defendants would discriminate. *Id.* Consequently, their tying claim was "severely diminished." *Id.* at 267.

Second, the court held that the complained-of fees—i.e., the standard, pro-rated membership fee—did not unreasonably restrain trade. It noted that "[p]rivate organizations often charge membership fees on a pro-rata basis. This practice distributes the organizations' expenses among all persons who receive either direct or indirect benefits of the organization." *Id.* at 268. Because the plaintiffs failed to show that the fees were "anti-competitive," "unreasonable or discriminatory," they failed to sufficiently allege a claim under § 1. *Id.* at 268–69.

Third, defendant's tie of access to the MLS to membership in a realtor association did not violate § 1 because it was reasonable. *Id.* at 269. Indeed, the court noted, such a restriction is integral to a trade association's function. *Id. Associated Press* "did not allow competing non-members to by-pass membership but required the private organization to open up membership to these non-members." *Id.* at 270.

The Court finds *Pope* persuasive and adopts its reasoning in its entirety. Here, similar to *Pope*, plaintiff refuses to join a realtor association. Nowhere does plaintiff allege that if

he obtained a broker's license and paid his dues defendants would deny his application. Simply put, plaintiff wants membership benefits without the costs. Defendants' reasonable denial of plaintiff's demand does not violate § 1.

### c. Sherman Act § 2—Counts I and IV: Even if plaintiff has standing, the Court cannot reasonably infer that defendants have § 2 monopoly power.

Plaintiff argues that Realcomp maintains a monopoly over the southeast Michigan real estate market. In support, he quotes *Realcomp II, Ltd. v. F.T.C.*, 635 F.3d 815, 829 (6th Cir. 2011), which states: "Given the extensive and undisputed market analysis undertaken by the ALJ and adopted by the Commission, substantial evidence supports the Commission's findings that Realcomp possessed substantial market power." Plaintiff alleges that "Realcomp continues to be organized and operate in a substantially similar manner as it did when the FTC made its findings in 2007." Compl. ¶ 33. This, plaintiff argues, is enough to show a violation of § 2.

Plaintiff's argument suffers from two flaws. First, markets and organizations change.[6] Plaintiff fails to allege any facts showing the current state of the real-estate market. Second, monopoly power under § 2 is something greater than the substantial market power under § 1. *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481 (1992). Yet plaintiff alleges only that Realcomp formerly possessed substantial market power. This allegation alone is not enough for the Court to reasonably infer that Realcomp possesses § 2 monopoly market power.

### III. Conclusion

For the reasons stated above, the Court concludes that plaintiff has failed to state claim under §§ 1 and 2 of the Sherman Act.

Accordingly,

---

[6] For example, today, Realcomp participates in data-sharing arrangements not in effect in 2007.

IT IS ORDERED that defendants' motions to dismiss are granted.

| | |
|---|---|
| Dated: March 22, 2018<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 22, 2018.

        s/Johnetta M. Curry-Williams
        Case Manager